# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 4, 2011              Decided April 26, 2011

No. 10-7068

PAN AM FLIGHT 73 LIAISON GROUP,
APPELLEE

v.

GIATRI DAVE AND GARGI DAVE,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-mc-00077)

*Kathryn Lee Boyd* argued the cause and filed the briefs for appellants.

*Edward J. Shapiro* argued the cause for appellee. With him on the brief were *Gabriel K. Bell* and *Abid R. Qureshi*.

Before: GARLAND and BROWN, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*:  The issue in this appeal is whether the district court properly granted a motion to compel arbitration under § 4 of the Federal Arbitration Act.  The issue arises in the following setting.

Sisters  Giatri and Gargi Davé are United States citizens, residing in California.  In September 1986, when they were children, they were traveling together aboard Pan Am Airways Flight 73.  Libyan terrorists hijacked the plane and held it for sixteen hours on the tarmac in Karachi, Pakistan.  The hijackers killed twenty of the passengers; 120 others, including the Davés, suffered injuries.

Nearly twenty years later, in an effort to normalize relations with the United States, the Libyan government admitted responsibility for sponsoring several acts of international terrorism.  On September 20, 2004, President George W. Bush lifted sanctions against Libya.  Libya was later removed from the State Department's list of state sponsors of terrorism.

While this normalization process was ongoing, a group of passengers from Flight 73, including the Davés, signed what they termed a "Joint Prosecution Agreement."  The Agreement declared that the parties to it had a common interest in pursuing legal remedies against Libya and the individuals responsible for the hijacking.   Five of the passengers—the "Liaison Group"—were designated "managing agents" of the litigation, with the law firm of Crowell & Moring LLP serving as litigation counsel.  The Agreement set up a pooling mechanism for recovered funds and contained an arbitration clause providing that "[i]n the event a dispute arises under this Agreement between any Parties either regarding the construction and enforceability of the Agreement or any actions or disputes arising under or in connection with the Agreement, the Parties agree that any such dispute shall be submitted for confidential

arbitration under the provisions of the American Arbitration Association ('AAA') and shall be venued in the District of Columbia."

In 2006, the parties to the Agreement filed a lawsuit against the Libyan government. While the lawsuit was pending, the United States and Libya reached a diplomatic settlement relating to claims against the Libyan government for acts of terrorism. Under the settlement, the United States agreed to bring about the termination of all then-pending terrorism-related litigation against Libya in American courts and to preclude all such future suits. In return, Libya agreed to deposit $1.5 billion into a settlement fund for distribution by the United States to U.S. national victims of Libyan terrorism.

Congress provided for the implementation of the settlement through legislation. The Libyan Claims Resolution Act granted immunity to Libya from terrorism-related suits brought in United States' courts. *See* Pub. L. No. 110-301, § 5, 122 Stat. 2999 (2008) (codified at 28 U.S.C. § 1605A). The Act gave the Secretary of State authority "to designate 1 or more entities to assist in providing compensation to nationals of the United States," pursuant to the settlement agreement. *Id.* § 4(a)(1). Section 4 also contained an immunity provision, central to the Davés' appeal:

> (b) IMMUNITY.—
>> (1) PROPERTY.—
>>> (A) IN GENERAL.—Notwithstanding any other provision of law, if the Secretary designates any entity under subsection (a)(1), any property described in subparagraph (B) of this paragraph shall be immune from attachment or any other judi-

cial process. Such immunity shall be in addition to any other applicable immunity. (B) PROPERTY DESCRIBED.—The property described in this subparagraph is any property that—
(i) relates to the claims agreement; and
(ii) for the purpose of implementing the claims agreement, is—
(I) held by an entity designated by the Secretary under subsection (a)(1);
(II) transferred to the entity; or
(III) transferred from the entity.
(2) OTHER ACTS.—An entity designated by the Secretary under subsection (a)(1), and any person acting through or on behalf of such entity, shall not be liable in any Federal or State court for any action taken to implement a claims agreement.

Pursuant to the Act and to Executive Order No. 13477, 73 Fed. Reg. 65,965 (Nov. 5, 2008), which implemented it, the lawsuit by the parties to the Joint Prosecution Agreement was dismissed.

The Davés timely submitted their claims against Libya to a commission the State Department established for administering the settlement. Before receiving settlement funds, the Davés brought an action in California state court against Crowell & Moring and the Liaison Group. Their suit asked for a declaration that the Joint Prosecution Agreement did not cover money obtained under the settlement agreement and was otherwise invalid. It also alleged that the Joint Prosecution Agreement was in conflict with the federal policies embodied in the

settlement agreement, the Claims Resolution Act and the related Executive Order.

The Liaison Group filed this action in the United States District Court for the District of Columbia seeking to compel arbitration under § 4 of the Federal Arbitration Act, 9 U.S.C. § 4. Section 4 provides that "a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Rent-a-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010) (quoting 9 U.S.C. § 4). The Liaison Group argued that the Davés' California claims should be submitted to arbitration under the Joint Prosecution Agreement's arbitration clause. The district court agreed and granted the motion to compel arbitration.

The Davés' main argument on appeal is that the Libyan Claims Resolution Act grants them immunity from an arbitration order in the circumstances presented here. The immunity provision they rely upon, § 4(b)(1)(A), states that "any property described in subparagraph (B) of this paragraph shall be immune from attachment or any other judicial process." Whatever the precise scope of the immunity thus granted, it protects only "property." An order compelling arbitration under the Federal Arbitration Act does not work against property held by the Davés or anyone else. The order requires only that the Davés submit their dispute with the Liaison Group to arbitration. The district court's order compelling arbitration therefore did not violate the terms of the Libyan Claims Resolution Act's grant of immunity.

The Davés raise other arguments against the Joint Prosecution Agreement. These go to the validity of the underlying contract, not to the enforceability of the arbitration clause. As

such, they are properly left to the arbitrator, at least in the first instance. *See Rent-a-Center*, 130 S. Ct. at 2778. We decide only that the Libyan Claims Resolution Act did not prevent the district court from ordering arbitration of the underlying dispute. On these grounds, the order is

*Affirmed.*